## THE CLARA and THE RELIANCE.

### McCAFFREY et al. v. THE CLARA and THE RELIANCE.

(Circuit Court of Appeals, Second Circuit. May 23, 1893.)

**1. COLLISION—STEAMER—TIDE—LOOKOUTS.**
The tug C., with a barge lashed to her port side, was going up the East river with a strong flood tide, within 400 feet of the New York shore, and was nearing Corlear's Hook. The steamer R., deeply loaded by the head, was coming down, hugging the New York shore to avoid the tide. When nearly opposite the Hook, and some 75 feet from the shore, she starboarded her helm a little, intending to go over to the Brooklyn shore, and then for the first time discovered the C. some 200 or 300 feet down the river. Seeing that she could not safely cross the C.'s bows, she ported, and attempted to pass between the C. and the New York shore, but was unable to breast the tide, and, losing control of her movements, was swept against the C.'s tow, and sunk it. The C. ported and reversed, but was unable to stop her headway. The R. had no lookout, and her captain at the wheel did not see the C. until he was about to cross her course. *Held*, that the R. was in fault, the collision being due to the absence of a lookout on her. 49 Fed. Rep. 765, affirmed.

**2. SAME—CONTRIBUTORY NEGLIGENCE.**
The fact that the C. was violating the state statute requiring vessels to navigate as near the middle of the river as possible, was not a contributing cause of the collision, as there was ample room for the R. to avoid her had she seen the C. in time. 49 Fed. Rep. 765, reversed.

**3. SAME—REVIEW—MATTERS NOT APPARENT ON RECORD.**
The holding of the trial court that the C. was in fault in violating a rule of the supervising inspectors cannot be reviewed on appeal where such rule is not set out in the record or the briefs, for the appellate court cannot take judicial notice of such rules, and will determine the case without regard to any alleged fault based on their violation.

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. This was a libel by Charles A. McCaffrey and others against the steam tug Clara and the steam lighter Reliance for damages resulting from a collision. Both vessels were condemned in the lower court, (49 Fed. Rep. 765,) and the claimant of each appeals. Affirmed as to the Reliance, and reversed as to the Clara.

W. W. Goodrich, for the Clara.
Harrington Putnam, for the Reliance.
A. A. Wray, for appellees.

Before WALLACE and LACOMBE, Circuit Judges.

PER CURIAM. The libelants sue to recover losses sustained by the sinking of the barge George Adams while in tow of the steam tug Clara in a collision with the steamship Reliance, which took place off Corlear's Hook, in the East river, in the forenoon of October 20, 1891. The libel proceeds against both the Reliance and the Clara, charging each with fault contributory to the collision. Both vessels were condemned by the district court, and the claimant of each has appealed to this court.

At the time of the collision there was a strong flood tide, running about four knots an hour. The Clara, with the barge in tow, lashed to her port side, was proceeding up the river, and, as she neared Corlear's Hook, approached the New York shore, and kept on at a distance from it of about 400 feet. The Reliance was proceeding down the river, hugging the New York shore, to avoid the tide, and as she neared the Hook kept within about 75 to 100 feet from shore. She was deeply loaded by the head. She intended, upon reaching the Hook, where she would encounter the force of the tide, to cross the river, and go down on the Brooklyn side. Accordingly, when nearly opposite the Hook, she starboarded her wheel a little. Very shortly after doing so she discovered the Clara about 200 or 300 feet further down the river, and, seeing that she could not safely cross the course of the Clara, ported her wheel, and attempted to pass between the Clara and the New York shore. In attempting this maneuver she was unable to breast the strong tide at the Hook, which was then bearing upon her starboard bow, lost control of her movements, and was carried by the current across and somewhat down the river until she struck the barge of the Clara on the port bow. The Clara, as soon as she saw that the Reliance was being carried across her path by the current, reversed her engine and ported her helm, but, owing to the force of the tide, she could not wholly stop her headway before the collision took place. She had seen the Reliance some time before the Reliance saw her, but, being 300 feet further out in the river than the Reliance had no apprehension of danger until the Reliance commenced to sheer. The Reliance had no lookout, and her master, who was at the wheel in the pilot house, although he could have seen the Clara before he put his helm to starboard for a considerable distance, did not see her until his vessel had run about 100 feet under her starboard helm.

The learned district judge held both vessels in fault for the collision, because neither gave the signals required by the rules of the supervising inspectors. He also held the Reliance in fault because she did not keep a proper lookout, and the Clara in fault because she was navigating the river in violation of the state statute which requires steamboats at the part of the river where the collision took place to be navigated as near as possible in the center of the river.

The rules of the supervising inspectors do not seem to have been introduced in evidence. They are not in the record, nor are there any statements in the briefs of counsel which can be taken as admitting the existence of any particular rule. According to

the doctrine of The E. A. Packer, 140 U. S. 360, 11 Sup. Ct. Rep. 794, we cannot take notice of them. In that case the court said: "No such rule is incorporated in the record or in the briefs, and it is not a regulation of which we can take judicial notice." We must, therefore, in disposing of the case, disregard any alleged faults based upon the violation of such rules.

The Reliance was clearly in fault for her neglect to observe the Clara. The absence of a lookout cannot be deemed inconsequential. Her master, when asked why he did not see the Clara earlier, could only say: "I don't know. I didn't happen to notice her." If he had observed her before he put his vessel on her course to port, or at any time before the Reliance had encountered the full force of the tide on her starboard bow, there is no reason to doubt that he could and would have gradually brought his vessel to starboard, and passed safely between the Clara and the New York shore. The collision is directly attributable to this neglect. When he did see the Clara, it was too late to attempt to go to starboard without serious risk. He doubtless supposed that he could make the maneuver safely. Under ordinary circumstances, there was ample room between his vessel and the Clara to do so. But, deeply loaded by the head as his vessel was, the attempt to turn her sharply against a four-knot tide bearing upon her starboard bow was one of difficulty, and, as the event proved, could not be accomplished.

The more difficult question in the case is whether the Clara is also to be deemed in fault for the collision. The only fault which can be imputed to her is that of navigating too near the New York shore, in disregard of the state statute which required her to be navigated as near as possible in the center of the river. But she is not to be condemned if her fault was a remote one, and not a proximate cause of the disaster; and the real question as regards her liability is whether her fault was not one of that description. Although she was improperly beyond mid-river, she was not so near the shore as to embarrass the Reliance in rounding the Hook if the latter had been properly navigated. We do not overlook the rule that it is to be presumed against a vessel which at the time of a collision is in violation of a statutory regulation intended to prevent collisions that her fault was at least a contributory cause of the disaster, and that the burden rests upon her of showing not merely that it probably was not one of the causes, but that, under the circumstances, it unquestionably was not. But, as was said in The Britannia, 34 Fed. Rep. 557, by the learned district judge who decided the present cause, in a case where a breach of the same statute was under consideration:

"The mere transgression of such a statute will not make the vessel liable where the disobedience of it did not contribute to the collision; and, inasmuch as only the proximate causes of collision are deemed material, the mere fact that the vessel is on the wrong side of the river does not make her liable if there was ample time and space for the vessels to avoid each other by the use of ordinary care. In such cases the cause of the collision is deemed not the simple presence of the vessel in one part of the river, rather than in another part, but the bad navigation of the vessel that, having ample time and space, might easily have avoided the collision, but did not do so."

A finding that negligence, or an act not amounting to a wanton wrong, is the proximate cause of an injury, is not warranted unless it appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. The Clara was under no obligation to anticipate that the Reliance would not see her, would take a course across the course of the Clara, and then, instead of backing and reversing, would attempt to make the hazardous movement which resulted in the collision. We conclude that the Reliance was wholly responsible for the collision, and that the Clara's fault did not contribute to it.

The decree of the district court is reversed, and the cause remanded, with instructions to dismiss the libel as against the Clara, but without costs, and to decree against the Reliance in favor of the claimant of the Clara for the costs of this court, and for the libelants against the Reliance for the losses sustained by the collision and the costs of the district court.