(33 App. Div. 77.)

### JOSH et al. v. MARSHALL.

(Supreme Court, Appellate Division, Fourth Department. July 26, 1898.)

1. FISHING WITH NETS—LICENSES—CONSTRUCTION OF STATUTE.
    By Laws 1895, c. 974, § 132, fishing on Lake Ontario except by angling is forbidden within one mile of the shore. Section 134 provides that the meshes of nets used in said lake shall not be less than $1\frac{1}{8}$ inches in bar. Section 151 provides for granting licenses to seines, fykes, and nets in water when specially permitted by the act, and there are a number of cases specified where special permission is granted outside of Lake Ontario. Section 150 prohibits all fishing in the lakes and inland waters of the state except such as is permitted by the act, and except where otherwise provided. *Held*, that section 151, providing for licenses, applies to fishing w th nets beyond the mile limit in Lake Ontario, as authorized by sections 132 and 134, and within the exceptions of section 150, and that licenses are not limited to the cases specified in section 151 as specially permitted by the act.

2. EVIDENCE—JUDICIAL NOTICE—RULES OF FISH COMMISSIONERS.
    By Laws 1895, c. 974, § 151, it was made the duty of the board of fish commissioners to prescribe rules and regulations for granting licenses to nets in water when specially permitted by the act, and to file a duly authenticated copy thereof with the secretary of state, whose duty it was to print the same in the Session Laws, which rules were to take effect on September 1, 1895; and thereafter fishing with nets without a license obtained under the rules and regulations was prohibited. *Held*, that judicial notice of the existence of the rules and regulations would not be taken.

3. SAME—RULES OF FISH COMMISSIONERS—HOW PROVED.
    In an action against a fish protector for seizing nets used without a license obtained under the rules and regulations which the fish commissioners were directed to prescribe by Laws 1895, c. 974, § 151, the record of plaintiffs' conviction of using the nets without a license is not competent evidence of the rules and regulations which are embraced therein, as part of the evidence admitted over plaintiffs' objection.

4. FISH—WRONGFUL SEIZURE OF NETS—PRIMA FACIE CASE—DEFENSE.
    In an action against a fish protector for seizing nets used without a license obtained under the rules and regulations which the fish commission-

ers were directed to prescribe by Laws 1895, c. 974, § 151, before a license could be required, evidence of the seizure establishes a prima facie case. for which plaintiff was entitled to damages; and, to justify the seizure, it devolved on defendant to show that the rules and regulations providing for a license had been duly made and published.

Appeal from Monroe county court.

Action by Frederick Josh and another against Simon Marshall. Judgment for plaintiffs, and defendant appeals. Affirmed.

The action originated in a justice's court in Monroe county. The complaint alleged that on the 21st day of May, 1896, the plaintiffs were the owners and in possession of a quantity of gill nets, about 1,600 feet in length, which had been set by them in the waters of Lake Ontario, adjoining the town of Irondequoit, in said county, and at a distance of about 2½ miles from the shore of the lake; that the defendant on that day wrongfully and unlawfully took up said nets, and took them into his possession, and has ever since retained them. The defendant answered, denying the allegations of the complaint, and alleging that he was a special game and fish protector, appointed and qualified under the laws of this state; that the nets mentioned in the complaint were about one-inch bar, and less than two inches; that plaintiffs were fishing with said nets in Lake Ontario, without having procured any license therefor. And the answer further alleged that the acts of the defendant in relation to said nets were performed in pursuance of his authority and duties as such game and fish protector, and that the plaintiffs had been convicted of a misdemeanor in fishing in the lake with these nets without a license. The justice rendered a judgment for the plaintiffs for $45, the value of the nets, and costs. From this judgment, the defendant appealed to the county court of Monroe county, where the judgment was affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Howard H. Widener, for appellant.

H. B. Hallock, for respondents.

WARD, J. The disposition of this case involves a construction of the "Fisheries, Game and Forest Law," being chapter 488 of the Laws of 1892, as amended by Laws 1895, c. 974. The sections of that law particularly applicable here, as they stood at the time that the nets were taken by the defendant, who was a special game and fish protector, are the following (Laws 1895, c. 974):

"Sec. 132. No fish shall be fished for, caught or killed in any manner or by any device except angling * * * in Lake Ontario within one mile of the shore, or of any island therein."

"Sec. 134. The meshes of nets used * * * in Lake Ontario shall not be less than one and one-eighth inch bar. Whoever shall violate or attempt to violate the provisions of this section shall be deemed guilty of a misdemeanor," etc.

"Sec. 150. Fishing with nets, seines, * * * or other devices except angling or placing, drawing or using the same in any of the rivers, lakes and inland waters of this state is prohibited except as permitted by this act, and except where otherwise provided.

"Sec. 151. It shall be the duty of the board of commissioners of fisheries, game and forests to prescribe rules and regulations for the purpose of granting all licenses to seines, fykes and nets in water when specially permitted by this act, * * * and to cause a duly authenticated copy of the same to be filed in the office of the secretary of state, and it shall be the duty of the secretary of the state to print such rules and regulations in the volume of Session Laws for the current year. Such rules and regulations shall take

effect on the first day of September, 1895, and thereafter fishing with seines, fykes and nets other than scap nets, dip nets and nets used for catching minnows for bait, without a license having been obtained therefor in accordance with such rules and regulations, is prohibited." (A violation of this section is made a misdemeanor.)

### Laws 1892, c. 488:

"Sec. 32. It is the duty of every protector and forester to seize, remove and forthwith destroy any net, pound or other device for taking fish found in or upon any of the waters of this state where fishing with nets or devices is prohibited or illegal, and such nets * · * * are declared to be a public nuisance, and may be abated and summarily destroyed by any game protector and forester, and no action for damages shall lie or be maintained against any person for such seizure or destruction."

These sections of the statutes thoroughly develop the legislative scheme for the protection of fish and the regulation of fishing within the waters of this state, and they are to be construed together. The record discloses that the nets of the plaintiffs that were seized by the defendant were not less than 1⅛-inch bar. The northern boundary of the state of New York along Lake Ontario is the center of the lake. The place where the nets were stretched was therefore within the boundaries of and subject to the jurisdiction of this state. The legislature has the power to regulate and control the right of fishing in the public waters of the state, and, in the exercise of this power, it may prohibit the taking of fish with nets in specified waters, and, by its declaration, make the setting of nets for that purpose a public nuisance, and authorize the summary abatement of the nuisance. Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878.

The position taken by the respondents is to the effect that the legislature by sections 132 and 134 of the game law, which we have quoted, by implication permits fishing with nets with meshes of not less than 1⅛-inch bar, without a license, in Lake Ontario, beyond the limits of one mile from the shore; that the section of the statute requiring a license for fishing with these nets does not apply to this case, but only to cases specified in section 151 that are "specially permitted by this act"; and that there are a number of cases specified in the act where special permission is granted thereby to fish; and that in those cases, only, is a license required. "In construing any statute, the intention of the lawmakers must be sought for. That is the grand central light in which all statutes must be read. The intention, however, is to be sought for in the language used. But, for the purpose of understanding the language, the objects the lawmakers had in view, and the motives which moved them to enact the law, may be considered." Iron Co. v. Alger, 54 N. Y. 175. We think this position of the respondents is not tenable. It gives too narrow a construction to this remedial statute. Such a construction should be given the statute as will fairly carry out the intent and purpose of the legislature in creating it. As we have seen, section 134 prescribes "the size of the meshes of the nets used in Lake Ontario." This must refer to the use of nets beyond a mile from the shore, as within that limit, by section 132, fishing except by angling is absolutely forbidden. The effect of these two sections is to authorize fishing with nets beyond the mile limit in Lake Ontario, and they have all the force and

authority of an express permission to do so. The same reason exists for requiring a license in this case as in one where permission is expressly given. Section 150 prohibits all fishing with nets in the lakes and inland waters of this state except such as is permitted by the act, and except where otherwise provided. These exceptions include the right to fish with nets as provided in the other sections of the law.

We are now brought to the consideration of the further question as to whether the plaintiffs were bound to establish that a license had been granted them by the fish commissioners, under section 151, in order to justify the use of their nets in Lake Ontario. Upon the trial before the justice the counsel for the defendant offered in evidence "the rules and regulations of the fish, game, and forest commissioners of the state of New York adopted July 10, 1895, pursuant to section 151 of the fisheries, game, and forest law, as amended by chapter 974 of the Laws of 1895, printed in Session Laws of 1895, from page 2141 to page 2144, inclusive." The plaintiffs' counsel objected to this as incompetent, upon the ground that there was no evidence before the court that any such rules or regulations were ever adopted. The objection was sustained. Turning to the volume quoted in this offer of evidence, there appears on page 2141 as follows: "Rules and regulations of the commissioners of fisheries, game and forests of the state of New York." Then follows a blank form for license, a blank for an application for a license, and rules and regulations governing the license, and governing the use of nets in Lake Ontario. These rules and regulations as printed were not authenticated by the commissioners, or certified in any manner by the secretary of state, except the general certificate that the secretary is required to make under chapter 682 of the Laws of 1892, entitled "The Legislative Law." The directions as to this certificate appear at pages 1676 and 1677 in volume 2 of the Laws of 1892, and have no reference to the certification of such rules as we are considering; nor does the certificate of the secretary of state in this volume, where the regulations purport to be printed, cover the case, the certificate simply being: "Pursuant to the directions of chapter 682, Laws of 1892, entitled the 'Legislative Law,' I hereby certify that the following volume of the laws of this state was printed under my direction." The court will not take judicial notice of the existence of these rules and regulations. Palmer v. Aldridge, 16 Barb. 131. If proper regulations under the statute were made and filed with the secretary of state, the original should have been produced, or a certified copy thereof, under section 933 of the Code of Civil Procedure. Indeed, it is not contended by the learned counsel for the appellant that the blank regulations appearing in the volume referred to were competent evidence; but he insists that the regulations were proved upon the trial in another manner.

The defendant offered to show upon the trial the papers establishing a conviction of the plaintiffs for a misdemeanor in using their nets in the lake, before another justice of the peace in Monroe county. We cannot see how this evidence was competent for any purpose; but it does not seem to have been objected to, nor does it appear affirmatively from the record that these proceedings were received in evidence;

but they form a part of the record in this case, and the reference made in that record to these rules and regulations is that the counsel. for the people offered them in evidence, from pages 2141 to 2142 of the Session Laws of 1895. This was objected to by the defendants in that proceeding and the plaintiffs here, as incompetent, but the objection was overruled. Now, the fact that this objectionable evidence was so offered and received over the objection of the plaintiffs, who were the defendants in that proceeding, does not conclude the plaintiffs in this action; and therefore in this action there was no legal evidence that the commissioners had created any regulations, or, if so, what those regulations were. The whole record in the criminal case was simply offered to show the plaintiffs' conviction of a criminal offense. Section 151 makes it the duty of the commissioners of fisheries to make and file in the office of the secretary of state rules and regulations as to the granting of licenses to fish with nets, "and thereafter fishing with * * * nets * *. * without a license having been obtained therefor in accordance with such rules and regulations is prohibited." It follows that, if there were no rules or regulations, there was no prohibition against the plaintiffs' fishing.

Prima facie, the seizing by the defendant of the plaintiffs' nets was a trespass for which the plaintiffs were entitled to recover damages. If the defendant could justify because the plaintiffs had no license, it devolved upon him to show that the regulation providing therefor had been duly made and published. This is not the ordinary case where an act is prohibited by statute unless a license is obtained for the commission of the act, and the machinery for the granting of the license in full operation, as in the cases that have been decided under the excise law; but the prescribing of the rules and regulations was a condition precedent to the duty of the citizen to obtain the license. He who seizes and destroys the property of another without his consent must strictly prove, step by step, the authority for doing it.

We are clearly of the opinion that as it did not appear that the board of commissioners of fisheries, game, and forests had prescribed rules and regulations for the purpose of granting licenses under section 151, so that the license could be obtained by the plaintiffs to fish with their nets beyond the mile limit, their property was not liable to confiscation and destruction as a nuisance, and that they could maintain this action, and that the judgment appealed from should be affirmed, with costs. All concur.